The next matter is number 171031 United States v. Daniel Colby Jr. Good morning. Good morning. May it please the court, John Calcagney for Daniel Colby. Your Honor, the appellant in this case asked the court to remedy the erroneous application of three sentencing guideline enhancements, which more than doubled his sentence following the conviction of a single count of felon in possession of a firearm. The enhancements at issue are as follows. Two points for the obstruction of justice, two points for a firearm being stolen, and four points for a firearm being used in connection with a felony offense, namely the threatening of a gentleman and a witness in this case named Forrest Smith. Can we go initially to the gun having been stolen? It doesn't matter whether he knew it was stolen or not. If it was a stolen gun and he had it, why is that not a clear enhancement? So, Your Honor, I concede that knowledge on the defendant's part as to whether or not the gun was stolen is not a requirement for the enhancement to apply. However, there needs to be a preponderance of the evidence that the firearm in question was actually stolen in order for it to apply. Now, in this particular case, depending upon what definition we look to for stolen, I would suggest to this particular court that there is no evidence that anyone took that firearm with either the intent to permanently deprive its lawful owner of it or the intent to deprive the owner of the rights and benefits with respect to it. Do we look to state law for that or do we simply look to the guidelines? Well, the guidelines, Your Honor, don't really give a definition of the word stolen. The government cites the Turley case, which references a definition that was imported in another case, and that's the more broader definition of the word stolen, any felonious intent, any felonious taking, if you will, with the intent to deprive an owner of the benefits or rights to ownership. And if you look to that particular definition, as I'm going to address in a moment, I'd suggest to the court that even applying that much broader definition, the evidence in this case didn't rise to a preponderance that the firearm was stolen. Well, if you look at his own, the e-mails back and forth, he pretty much says that it was stolen. Well, here's a chain of events, as I understood them from the trial, as outlined in the record. The firearm was owned by this woman named Stacy Duretti. The court knows that. Her daughter, Jillian, removes the firearm from her bedroom to Jillian's bedroom in an effort to maybe give it to her brother Gregory. Without permission of the mother. Certainly, but lack of permission is not enough to arise to the level of stolen. But I will concede it was without the permission and knowledge of the mother. And at that point, when the gun disappears. Yup, and the government concedes it was taken by her then brother Greg. That was conceded at sentencing. So another child of the lawful owner now removes it from the home. And gives it to the other fella. Well, tries to but never actually completes it. At one point in time, however, Colby does coordinate the return of this particular firearm. Isn't there enough evidence in the record that he knew when he got the gun that it was taken from the mother without her permission with an intent to deprive the mother of the gun? Isn't that enough to be stolen? Depending on how you view the evidence, your honor. It's obvious the evidence in this case that the gun was being borrowed from the mother because Greg had gotten himself in some trouble with some drug people and some unsavory characters and his life was in danger. Can you borrow it from the mother without the mother knowing it? Well, that's a good question, your honor. I think you can borrow something from somebody without their knowledge. Without yet forming the intent to permanently deprive them of it or to deprive them from rights or benefits of ownership. So you need to mind it when you go out today and your car is gone. One of us has it for a while. Your honor, we don't have a prior relationship. So if you were to take my car, that would be offensive. But perhaps if my brother or a family member were to borrow it, that would be a different story than we have in this particular case. What do you do about the fact that he buries the gun in a snow bank and then provides insufficient direction for anybody to find the gun? Well, that's an interpretation. I believe your honor is now interpreting the facts because... But that's what we have trial courts for. They get to interpret the facts. The gun was in fact buried, but if your honor recalls from the... But he buried it. Excuse me? Isn't there plenty of evidence that allows an inference that he buried the gun in the snow? Well, the testimony was that he coordinated having it buried and then provided exact location and direction as to where it could be found. If you believe Smith, your client had the gun in his hand pointing it at Smith. Well, talking about Smith for a moment... I'm just saying that was Smith's testimony. Smith's testimony was that the firearm that was pointed at him was a .22 caliber firearm, not a .38. He wasn't sure. Well, your honor, it's interesting to suggest that he wasn't sure when if you look at that, and I'll address that very clearly, here's Smith, an individual who grew up around firearms, who's familiar with firearms, who owned firearms. Smith says that his father had a .22 caliber revolver that he shot and had access to as a child. Let's assume that we decide that the court could believe Smith, notwithstanding the cross-examination points that you're going from. If we make that assumption that the court could believe Smith, then we have the gun in your client's hands, and we then have it in a snowbank, and we have him apparently claiming to know where it is in the snowbank, and giving directions to persons that do not enable them to find it, and the gun isn't found until a month later or something. Isn't that enough? If the court were to credit Smith in that Smith's testimony was that there was a .38 caliber, or that the weapon pointed at him, assuming this threatening incident even happened, was in fact a .38, then I think, your honor, that would be enough. But if you step back and look back at Smith's testimony, it was .22 caliber on the 911 call, .22 caliber to the police. Can I ask you about what you just conceded, just so I understand? Was the district court's theory as to why it was a stolen gun, that it was stolen by the defendant, or that it was stolen by the daughter? If my memory serves me correctly, I don't think the district court was clear on that particular point. So we have to defer to a factual finding on what it's stolen. What is the factual finding the district court made as to why the gun was stolen? I think the district court's going to conclude that because the daughter removed the gun from the home. If that's right, then it's irrelevant what the defendant did with respect to bearing the gun. But the problem with the district court's finding is that... This is a question that's helpful to you, just so you understand. But the problem here is that there was no evidence to establish any intent by anyone. I understand that's the issue on the daughter. Yes. Right. So if I understand your theory, we have a district court finding, which you can see we have to give some deference to. That finding is that it was stolen because the daughter took it from the mother. And your contention is that's not enough to show that it was stolen because all we have is that the daughter took it from the mother, and that mere fact alone doesn't make it stolen. Correct. And that's true under any theory of what something stolen is, whether it's permanent or just depriving of rights and benefits. Yes. Okay. I'll now turn my attention to speaking of some of the other enhancements. I'd like to talk about the obstruction of justice piece, if we could for a moment. I'm sure this court is very well aware of the provision set forth in United States v. Dunigan. And it's the appellant's position in this particular case that the district court judge at the time of sentencing did not meet the Dunigan requirements. In a case where the court seeks to impose the two-point obstruction enhancement on the grounds of perjury, and the defendant contests that he committed perjury, the district court is required to make a specific finding that the defendant willfully and materially committed perjury by making a false statement about a material matter. Here, the district court cites two facts by concluding that the defendant, quote, perjured himself by denying possession of the firearm, and secondly, by denying threatening of Forrest Smith. The defendant's testimony in this case was that, not that he denied possession of the firearm. We all know that there's different theories of possession, and possession in this case was the only issue before the jury. All other facts have been stipulated to, or other elements, shall I say. The defendant denied actually possessing a firearm, but essentially admitted to constructively or jointly possessing it. So for the court to conclude that the defendant lied by denying possession is simply erroneous. Moreover, the defendant's statements, even if inaccurate, need to be material to some of the issues in the case. Now, this circuit applies a very broad interpretation of materiality, defining it as a false statement with the ability to influence the decision or function of the jury. In this particular case, the only question put to the jury was whether or not the defendant, or shall I say the appellant, had possession of the firearm. And in his own testimony, he is admitting to constructive possession by having the ability to exercise control over its movement, and ultimately its location, the details of which were provided to the folks in order to find it. So I point that out regarding materiality. Thank you. Thank you. Good morning, Your Honor. Mickey Squirt, Benjamin Block on behalf of the United States. Can we start with the last question first? Because it seems to me that when that particular enhancement is used, it could be argued that it chills the right to a jury trial, because typically if a defendant takes the stand, there's going to be his or her take on what the evidence shows. And why did his testimony here rise to the level where it was appropriate for the district court to add the enhancement basically for perjury, for lying? Right. I think that the Supreme Court raises the same concern in Dunnegan that a system in which a defendant who testifies on their own behalf is punished in each and every case is not one that comports with the Constitution. And so the Dunnegan factors of willfulness, materiality, and falseness permit courts to make findings that the testimony was in fact intended to obstruct justice. And here the court made those findings. He clearly found false testimony with respect to Mr. Colby's actual possession of the gun, which I think is the fair reading of the district court's statement that he falsely denied possession. Because at the same time that he was making that finding, he was making the finding that Mr. Colby lied by denying threatening Forrest Smith with the gun. And what we're talking about here... That's a little different from the possession argument though, isn't it? He basically says, look, I got the gun, but I didn't steal the gun. I didn't intend to. And that was his take on what happened. Often defendants will have a different take than the prosecution has on what the defendant thought he was doing. Why does that rise to the level of perjury? Well, here the issue isn't whether he personally stole the gun or intended to steal the gun. Even if we only rely on the district court's finding that Forrest Smith testified truthfully and credibly that Colby threatened him with the firearm. That's sufficient. That is sufficient for perjury. That is a central issue in the case for Mr. Colby to falsely testify that he did not and the district court's permitted to make these credibility determinations. What's the central issue in the case? A central issue in the case is possession of the firearm. But I thought the counsel just said maybe I'm missing something. But the transcript will show that the defendant conceded he possessed. He conceded that he constructively possessed the firearm. So? So that doesn't change the jury's ability to hear testimony about actual possession. That's the difference that you're drawing. Right. That the government had two theories of possession, both actual and constructive. The jury was permitted to hear testimony on both. And the district court was permitted to make credibility determinations as to the witness's testimony. And here the district court's findings of the sentencing are not inconsistent in any way with the jury verdict in this case. And, in fact, it's substantially supported by other evidence in the record. I think that the text messages that Mr. Colby sent to his associates regarding the location of the gun, Mr. Colby would like you to take his testimony wholesale, but I think that the district court made a fair inference that his testimony was not truthful as to the real meaning of those text messages. You also have the neighbor who observed Colby run into the woods near where the gun was found after seeing him holding something in his sweatshirt that had a handle. And this was right around the time that Mr. Smith was threatened. So I think there's ample record evidence to support the district court's findings. And this court has said that that's sufficient in the Mercer case, even where the district court doesn't clearly state all three elements of the perjury finding. If he makes the finding and it's supported by the record, it's supportable. It's certainly not clearly erroneous. So I think that those cases, that's why the perjury enhancement was appropriate, Your Honor. With respect to the stolen firearm enhancement, I think the clear point here is that this firearm was taken without permission of the owner. By the daughter? By the daughter. What's the finding you think we're supposed to defer to as to why it's stolen? That it was taken from the daughter or that it was taken by the defendant when he buried it? I think there are multiple grounds on which. That's not my question. What finding do you think the district court made as to why it was stolen? I think the district court made two findings. One, that it was stolen and that it was taken from the mother without the mother's permission by whomever. And I think he made a second finding that in hiding the gun in the manner that Colby did, he was intending to either dispose of it or prevent its recovery by the owner and permit him to go back and retrieve it at another time. And when you say that, are you saying because he recited those facts, the district court recited those facts, or is there something you would point us to where the district court honed in on one rather than the other or both of them? I believe the district court's exact words, and they won't be exact, but he made the finding that the gun was stolen, that the record supported the inference that the defendant knew that the gun was stolen, even though that isn't necessary for the enhancement. And then he made the subsequent finding that he hid the gun, and he hid the gun in the snow for the purpose of hiding it, which is a little bit circular, but I think that a reading of the transcript suggests that hiding it for the purpose of hiding it suggests an intent to deprive. So you're saying when the court said, I find that the gun was hidden in the snow by the defendant and he did that to hide the gun, you would point us to that as at least one of the grounds for why the district court said that it was stolen? Yes, Your Honor. There's no evidence in the record, or at least I didn't find any, that indicates how the defendant got the gun. That's correct. In the trial transcript, that's not made clear, and in sentencing the government did concede that it was not the government's theory that Mr. Colby took the gun from the rightful owner, simply that he acquired it at some point in time. I get the hiding argument, just on the daughter point, if the theory is that the finding was that the daughter, by taking it without permission, stole the gun. Could you just flush out what the government's idea there is? Any time a child takes some property of a parent, it's a crime? Well, whether it's a crime that would be... It has to be a crime, doesn't it? Whether it's a crime that would be prosecuted... I know, but you say that it is a crime, could be prosecuted. I think that if you have a family member who takes an object without permission, then yes, that meets the definition. What's the basis here for finding that it's without permission? All the testimony in the case made clear that the gun was taken without permission, and I think that's supported by the somewhat frantic text messages back and forth where they're desperately trying to get the gun back to return it, presumably in order to avoid getting in trouble with the rightful owner. All that suggests that the owner, during that time period, was being deprived of the rights and benefits of ownership. If I steal my mother's jewelry and pawn it in order to get money for drugs, that would be a crime. You're basically saying this is the same thing. Correct, Your Honor. And the fact that the taker of the firearm or the jewelry, in your example, has the intent in their mind to earn the money back to go back to the pawn shop, repurchase the jewelry and return it to the owner, doesn't mean that it wasn't stolen in the first place. That's irrelevant. Right. And finally, simply with respect to the in connection with another felony enhancement, this is a clear question of a district court's credibility determination that Forrest Smith testified truthfully and credibly, and it was supported by other evidence in the record. The fact that Mr. Colby wishes that he made a different finding doesn't mean that that finding was clearly erroneous. I think it's impossible, if I could just complete my thought, I think it's impossible to read this record and find that the district court made such a substantial error in crediting Forrest Smith's testimony that that enhancement would not be appropriate. Thank you. Thank you.